**BREWERY, GRAIN & ALLIED WORK-
ERS, LOCAL UNION 1158, etc., et
al., Plaintiffs-Appellees,**

v.

**FALSTAFF BREWING CORPORATION,
Defendant-Appellant.**

No. 81–3451.

United States Court of Appeals,
Fifth Circuit.

June 21, 1982.

Molony, Nolan, North, Riess & Hall, Law-
rence J. Molony, Metairie, La., Ernest A.
Burguieres, III, New Orleans, La., for de-
fendant-appellant.

Hess & Washofsky, Dennis M. Angelico,
John W. Ormand, New Orleans, La., for
plaintiffs-appellees.

Before RUBIN, REAVLEY and TATE,
Circuit Judges.

TATE, Circuit Judge:

In this suit by two unions against an
employer, jurisdiction is based solely upon
section 301 of the National Labor Relations
Act, 29 U.S.C. § 185(a), which authorizes
suits in federal court for a violation of a
collective bargaining contract.[1] Brewery,
Grain and Allied Workers, Local No. 1158,
and the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Local No. 270 (referred
to jointly as "the Union") brought suit
against the Falstaff Brewing Corporation
("Falstaff"), claiming that Falstaff violated
its collective bargaining agreement with
the Union by refusing to accord the same
level of reduced early retirement benefits to
employees who had been terminated before
retirement, as to those who were in Fal-
staff's employ when they retired. The dis-
trict court granted the Union's motion for
summary judgment, finding that Falstaff
breached its collective bargaining agree-
ment by not providing identical rates of
benefit reductions to the two groups of
employees.

---

1. Section 301(a) of the National Labor Rela-
tions Act, 29 U.S.C. § 185(a) provides:

    (a) Suits for violation of contracts between
an employer and a labor organization repre-
senting employees in an industry affecting
commerce as defined in this chapter, or be-
tween any such labor organizations, may be
brought in any district court of the United
States having jurisdiction of the parties,
without respect to the amount in controversy
or without regard to the citizenship of the
parties.

In the present suit, based solely upon a breach of the collective bargaining agreement, the issue is whether under the *collective bargaining agreement* Falstaff was obligated to pay certain former employees the same reduced pension benefits as it agreed to pay present employees. We do not find to be pertinent to determination of this issue whether Falstaff did or did not breach its obligation to bargain with the Union before providing pension benefits for these former employees (as statutorily required by the ERISA statute, see below), nor whether the Union did or did not acquiesce in pension plan modifications that provided such benefits—hotly argued issues below, the resolution of which in part led the district court into error. Finding that the collective bargaining agreement did not require Falstaff to pay the former employees the benefits sought for them by the Union's suit, we reverse the grant of summary judgment in favor of the Union, and we direct that Falstaff's cross motion for summary judgment be entered.

*Facts*

Falstaff and the Union entered into a joint stipulation of facts that included the submission of eight joint exhibits. The undisputed facts are set out below.

2. Article VI, Section 6.3 of the pension plan provided that:

6.3 *Early Retirement Benefit.* A participant,
(a) who has Company credited service,
(b) who has attained his Early Retirement Date, and
(c) who at said date shall have completed at least twenty-five (25) years of credited service, and
(d) who at said date has not reached age sixty-five (65), shall be entitled to an Early Retirement Benefit in a monthly amount identical to the Normal Retirement Benefit the participant would have received had he been sixty-five (65) on his Early Retirement Date, and calculated upon the benefit levels and years of credited service earned at such Early Retirement Date, except that such benefit shall be reduced by five-tenths ($^5/_{10ths}$) of one per cent (1%) for each complete calendar month that he is less than sixty-five (65) at such Early Retirement Date.

3. A "continuing former participant" was defined in the pension plan "as a person who had been a participant hereunder whose em-

Under an earlier pension plan agreement between the parties, an employee would become eligible for early retirement if he attained age fifty-five while in Falstaff's employ, and after at least twenty-five years of credited service. There was, however, an actuarial reduction of benefits amounting to 6 percent per annum if an employee exercised his early retirement option.[2] Any employee whose employment was terminated for any cause except death or retirement, but who earned at least fifteen years of credited service at the date of termination, was considered a "continuing former participant,"[3] entitled to a "vested deferred retirement benefit"[4] that would enable him to obtain full retirement benefits at age sixty-five, the normal retirement age. A "continuing former participant" was, therefore, not eligible for early retirement.

During negotiations for the 1975–77 collective bargaining agreement, the parties amended the pension plan only as it pertained to employees eligible for early retirement, but *not* for "continuing former participants" (who, as stated, were *not* eligible for early retirement). The amendment provided that an otherwise qualified early retiree need complete only fifteen (instead of

ployment in the brewing industry had terminated for any cause except death or retirement hereunder and who on the date of such termination had completed at least fifteen (15) years of credited service accumulated after April 1, 1952."

4. Article VI, Section 6.4 of the pension plan described this benefit:

6.4 *Vested Deferred Retirement Benefit.* A participant with fifteen (15) years or more of credited service, earned subsequent to April 1, 1952, who shall lose his credited service as set out in Article VII, Section 2, shall be eligible upon his attainment of age sixty-five (65) to receive a vested deferred retirement benefit which shall be calculated as would his Normal Retirement Benefit, and calculated upon both the years of credited service and at the benefit level which were in effect at the date the participant first became a continuing former participant. Death of the continuing former participant prior to his sixty-fifth (65th) birthday shall terminate any vested interest on the part of the participant.

twenty-five years) years of credited service to be eligible for early retirement benefits, and that the actuarial reduction was changed from 6 percent per annum to 4.2 percent per annum. Both changes were to become effective as of April 1, 1975. By the express terms of the pension plan amendment, the status of "continuing former participants" remained unchanged.[5]

The collective bargaining agreement between Falstaff and the Union was extended by agreement between the parties to remain in effect until April 1, 1979. Falstaff closed its New Orleans plant in November 1978, and the employees represented by the Union locals involved were terminated. The terminated (then) employees who had not reached age fifty-five with the required years of credited service thus became "continuing former participants"—who, as such were not entitled to early retirement benefits under the literal terms of the pension agreement. There is no charge by the Un-

ion that the plant closure was violative of the labor laws.

In 1977, Falstaff submitted a revised and restated version of its pension plan agreement with the Union to the Internal Revenue Service ("IRS") for review and approval under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001 et seq. Negotiations between Falstaff and the IRS continued until March 1979, when the pension plan was approved, effective as of January 1, 1976.

In order to comply with the statutory requirements of ERISA, Falstaff had to provide an early retirement option for "continuing former participants." Falstaff did so, but it provided that any "continuing former participants" who exercised their early retirement option would have their benefits reduced by 6 percent per annum, rather than 4.2 percent per annum, as provided for early retirees (exclusive of "continuing former participants") under the 1975 collective bargaining agreement.[6]

---

**5.** The relevant provision in the collective bargaining agreement provided that: "A change in the actuarial reduction for early retirement under the Basic Pension Plan will be from the present 6% per year to 4.2% per year for employees retiring on or after April 1, 1975."

The Union states that "the parties formally amended the pension plan agreement to reflect such a change." Union br. at 4. Under what was known as the "Fourth Amendment to the Falstaff Brewing Corporation and New Orleans Brewery Workers Pension Plan Agreement," the pension plan was amended to read:

Article VI, Section 6.3 shall be modified to read as follows:

"6.3 *Early Retirement Benefit.* A participant

(a) who has Company credited service,

(b) who has attained Early Retirement Date on or subsequent to April 1, 1975,

(c) who at said date shall have completed at least fifteen (15) years of credited service, and

(d) who at said date has not reached age sixty-five (65), shall be entitled to an Early Retirement Benefit or its equivalent actuarially determined value, in a monthly amount identical to the Normal Retirement Benefit the Participant would have received had he attained Normal Retirement Date on the Early Retirement Date, but based on the credited service earned at such Early Retirement Date, except that such benefit shall be reduced by thirty-five one hundredths ($^{35}/_{100}$) of one (1) per cent

for each complete calendar month that he is less than age sixty-five (65) on such Early Retirement Date."

**6.** Section 6.4 of the revised pension plan provided:

6.4 *Vested Deferred Retirement Benefit.* A participant with fifteen (15) years or more of credited service, earned subsequent to April 1, 1952, or subsequent to December 31, 1975, a participant with ten (10) years or more of Company credited service who would otherwise lose his credited service as set out in Article VII, Section 7.1 shall be eligible upon his attainment of age sixty-five (65) to receive a vested deferred retirement benefit which shall be calculated as would his Normal Retirement Benefit, and calculated upon both the years of credited service and at the benefit level which was in effect at the date the participant first became a continuing former participant.

A continuing former participant who meets the requirements for an Early Retirement Benefit as set forth in Section 6.3 shall be entitled to an Early Retirement Benefit or its actuarially determined value, in a monthly amount identical to the vested deferred retirement benefit, except that such benefit shall be reduced by five-tenths ($^5/_{10}$ths) of one percent (1%) for each complete calendar month that he is less than sixty-five (65) at such Early Retirement Date. Death of the continuing former participant prior to his

Falstaff claimed that its choice of the 6 percent per annum reduction level was required for solvency of the pension fund.

The Union became aware of the proposed reduction level for "continuing former participants" shortly after the plant closure occurred in November 1978. The Union filed this suit against Falstaff in March 1979, claiming that Falstaff had breached its collective bargaining agreement with the Unions by not providing "continuing former participants" with early retirement benefits at a 4.2 percent per annum reduction rate.[7]

The Union does not allege that any employee who reached age fifty-five while in Falstaff's employ after the required years of credited service, is not receiving early retirement benefits, if elected.

The district court found that Falstaff breached its collective bargaining agreement and granted the Union's motion for summary judgment. Falstaff appeals, urging reversal and the grant of its own cross motion for summary judgment.

*Issues*

On appeal, Falstaff argues that the district court erred in holding that Falstaff breached its collective bargaining agree-

ment with the Union. Specifically, Falstaff claims that: (1) the Union acquiesced in Falstaff's modification of the pension plan because it did not request bargaining over the revision when it first learned of Falstaff's deliberations on the matter in November 1978; (2) that Falstaff's statutory duty to bargain with the Union did not continue after the plant closure, because the bargaining unit ceased to exist; (3) that there was no breach of the collective bargaining agreement; and (4) that the district court misread certain provisions in the collective bargaining agreement.[8]

Although the Union insisted at oral argument that the theory of its case was based *solely* on the breach of contract provision, *see* section 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a), both parties have also made arguments concerning breaches of the statutory duty to bargain.[9]

In our view, the only issue presented to us by this appeal in this breach-of-contract case is whether the district court properly held that Falstaff breached its collective bargaining agreement with the Union. We thus do not reach and need not express an opinion on the unfair labor practice issues.

Normal Retirement Date or Early Retirement Date shall terminate any vested interest on the part of the participant.

The revised pension plan also provided that an employee would be considered as a "continuing former participant" if he completed at least ten years of service, and his termination occurred subsequent to December 31, 1975.

7. The Unions alleged that certain obligations arose out of the plant closure concerning severance relocation allowance, health and welfare benefits, vacation benefits, and pension and retirement benefits. The parties settled their grievances on all issues except the one involved in this case.

8. The district court read the collective bargaining agreement as providing: (1) that "continuing former participants" were employees "who had the required years of service with Falstaff, but who reached age Fifty-Five (55) while in the employ of Falstaff." Dist.Ct.Op. at 3; (2) that Falstaff applied the 6 percent per annum actuarial reduction to "all those individuals entitled to early retirement benefits." *Id.*; (3) that the collective bargaining agreement that provided for the change in the actuarial reduc-

tion did not distinguish between "continuing former participants" and other retirees. *See id.* at 4.

We do not agree with the district court's reading of the collective bargaining agreement. First, the parties agree that "continuing former participants" were those who had at least fifteen years of credited service, but did *not* reach age 55 while in Falstaff's employ. Second, the Union does not claim that the 6 percent per annum reduction applied to *all* retirees—only to "continuing former participants." Third, the Fourth Amendment to the pension plan did *not* cover "continuing former participants," as the Union admits. See Union br. at 4–5.

9. Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) provides:

(a) It shall be an unfair labor practice for an employer—

. . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

*Breach of the Collective Bargaining Agreement*

Falstaff argues that the 1975–77 collective bargaining agreement, which altered the pension plan, created no obligation whatsoever on Falstaff to accord early retirement rights to continuing former participants. The Union admitted this, *see* Union br. at 4–5, but nevertheless also presented us at oral argument with a claim to the effect that the 1975–77 collective bargaining agreement, which was extended through 1979, provided that *any* employee entitled to early retirement would receive early retirement benefits at the 4.2 percent per annum level (*see* note 5). The collective bargaining agreement was confected without reference to employees who because of termination of employment became "continuing former participants" under the pension plan. The Union nevertheless contends that, when because of ERISA's statutory requirement the "continuing former participants" *subsequently* became eligible under the pension plan for early retirement benefits, they should have received this benefit at the same bargained-for 4.2 percent reduction level as those who *did* qualify for early retirement under the plan. When asked whether the collective bargaining agreement provision relied upon by the Union *excluded* "continuing former participants," the Union responded that the provision was intended to cover *any* employee entitled to early retirement.

We find this argument unpersuasive. The Union admitted that the pension plan was amended to reflect the change in pension benefits desired and obtained by the Union in negotiating the 1975–77 collective bargaining agreement, and that the pension plan amendment specifically omitted change in the status of "continuing former participants." Given so, we are unable to agree with the Union's argument that the meaning of the collective bargaining agreement provision should be determined by reference to anything other than the pension plan changes agreed to at the time the bargaining contract was executed.

The change from the 6 percent per annum actuarial reduction to the 4.2 percent per annum reduction for early retirees was the result of collective bargaining between Falstaff and the Union. The Union used its bargaining power to create a benefit for a certain class of employees (prospective early retirees), and it was successful. The Union did not choose to bargain for the same benefit to be accorded to "continuing former participants," those who were *terminated* before qualifying for early retirement but nevertheless by reason of service entitled to pension benefits at age 65. While Federal law (ERISA) might statutorily require that these "continuing former participants" receive early retirement benefits, this statutory requirement does not provide that these benefits be accorded at the same level that they were contractually accorded to employees as a result of the collective bargaining process. The Union does not allege that the IRS required any specific level of benefit for plan approval or that the IRS complained of Falstaff's decision to offer a 6 percent reduction to "continuing former participants" now statutorily entitled to some early retirement benefits, during the two years of negotiation between Falstaff and the IRS leading to approval of Falstaff's revision of the pension plan to accord with ERISA requirements.[10] The 4.2 percent reduction represents a benefit gained as the result of the delicate balance of power that the National Labor Relations Act establishes between unions and employers; we see no basis upon which the Union may now seek to obtain a benefit for those who are *former* employees and also "continuing former participants," when it did not seek such benefit through collective bargaining when the 1975, and sub-

10. In brief, the Union also makes a conclusory generalized suggestion that the pension plan's imposition of a 6 percent reduction figure on "continuing former participants," as compared with a 4.2 percent reduction figure on early retirees, offends ERISA's standards against discriminatory treatment. Whether this argument has merit or none, it is irrelevant to this suit, which is based not on an ERISA violation but solely upon a breach of the collective bargaining contract.

sequent, collective bargaining agreements were confected.

Falstaff claims, and the Union does not dispute, that any employee who reached age fifty-five after serving the required number of years of credited service with Falstaff is receiving early retirement benefits, if the employee so elected. Thus, since we reject the Union's claims as to "continuing former participants," Falstaff did not breach its collective bargaining agreement with the Union and is therefore entitled to judgment on its cross motion for summary judgment.

*Conclusion*

Finding that Falstaff did not breach its collective bargaining agreement with the Union, we REVERSE the summary judgment granted the Union by the district court, and we direct that summary judgment be entered in favor of Falstaff on its cross motion.

REVERSED.